# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:13CR00036-004 |
| ) | Case No. 1:08CR00051-001 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JAMES THOMAS OXENDINE,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Brooks A. Duncan, Assistant Federal Public Defender, Roanoke, Virginia, for Defendant.*

The defendant, a federal inmate previously sentenced by this court, has filed a motion seeking compassionate release from his sentence. The motion is filed pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018), which permits a reduction in sentence after considering the factors set forth in 18 U.S.C. § 3553(a) and if the court finds "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." The defendant's motion has been fully briefed and is ripe for decision.

I.

Oxendine was sentenced by this court on November 10, 2014, after pleading guilty to one count of conspiring to possess with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and one count of distribution of cocaine base, in violation of 21 U.S.C. §841(b)(1)(C). He was determined to have an advisory sentencing guideline range of 151 months to 188 months, based on a total offense level of 29 and a criminal history category of VI. The court sentenced him to 151 months imprisonment on each count, to run concurrently. Oxendine was on supervised release from a prior drug conviction in this court, Case No. 1:08CR00051, when he committed his new drug offenses, so his supervised release was revoked. He received a consecutive sentence of 36 months for revocation of his supervision, producing a total sentence of 187 months.[1]

His present projected release date is August 29, 2028, after he completes his supervised release violation sentence. Oxendine has been diagnosed with Type II diabetes since incarcerated, although he has not been compliant with his medications. Suppl. Mot. Ex. B, Bureau of Prisons Health Servs. Clinical Encounter 2, ECF No. 668-2. Oxendine is incarcerated at FCI Gilmer, in Glenville, West Virginia. FCI Gilmer has no current coronavirus cases, and six infected inmates

---

[1] I will consider that his motion is meant to be referencing the sentences in both cases.

have recovered as of June 11, 2020.  Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 16, 2020).

On April 21, 2020, Oxendine requested a furlough from the Bureau of Prisons ("BOP") until the danger posed by COVID-19 passes.  Oxendine filed his pro se motion with the court on May 1, 2020, seeking a reduction in his sentence based on his purported health risks from the ongoing coronavirus pandemic.  On May 16, 2020, Oxendine's newly appointed counsel filed a supplemental motion requesting a sentence of time served.  In its response filed May 26, 2020, the United States argued that Oxendine had not exhausted his administrative remedies.  The government also contended that the BOP has adopted adequate policies to protect inmates and staff from infection.  The government noted Oxendine's underlying health conditions, but it concluded that Oxendine is not a good candidate for compassionate release due to his extensive criminal record and his recidivism risk.  Oxendine replied that he had exhausted his administrative remedies, as 30 days had passed without a response from the Warden, and he reiterated his increased health risks if he becomes infected.

## II.

The court may grant a § 3582(c)(1)(A) motion by an inmate "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). While exhaustion of administrative remedies is not a jurisdictional issue,[2] it is a mandatory condition under the statute, that when "properly invoked . . . must be enforced." *Hamer v. Neighborhood Hous. Servs. of Chi.,* 138 S. Ct. 13, 17 (2017).

Thirty days have now elapsed since Oxendine's April 21, 2020, request, and the Warden has not responded. Oxendine's initial request for furlough did not mention § 3582, the First Step Act, or compassionate release. His requested remedy was instead more akin to the one afforded by the CARES Act, which provides BOP with the sole authority to place an inmate on home confinement. However, Oxendine did not mention the CARES Act either. A similar situation arose in *United States v. Carr*, No. 1:13CR34-001, 2020 WL 2847633 (W.D. Va. June 2, 2020). In *Carr*, the inmate requested release under the CARES Act while also noting his medical conditions and how they might be negatively impacted by the coronavirus

---

[2] In considering § 3582(c)(2), a separate subsection setting forth another exception to the rule that a district court may not modify a sentence once imposed, the Fourth Circuit held that the lack of a prerequisite to a motion for reduction in sentence does not raise a jurisdictional issue. *United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017) (holding that "[t]he Supreme Court requires Congress to 'clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional' before a court can treat the limitation as such") (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). I find this reasoning persuasive as to the sister exception contained in § 3582(c)(1)(A).

pandemic.  I found that his release request encompassed a request for compassionate release, even though it only specifically referenced the CARES Act, because the regulations governing compassionate release do "not provide that a request must specifically use the words 'compassionate release' or 'early release' or that it must reference the applicable statute."  *Id.* at *3.  I find that this reasoning applies to Oxendine's initial request from April 21, 2020, even though the government claims it has no record of a request for compassionate release.

Oxendine's request is thus ripe for my consideration.  The U.S. Sentencing Guidelines Manual ("USSG") advises that a court should consider three issues before turning to the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable: (1) whether extraordinary and compelling reasons warrant the reduction; (2) whether the inmate is a danger to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether such a reduction is consistent with the policy statement.  USSG 1B1.13.

Oxendine is 43 years old.  He completed the eleventh grade but he did not graduate from high school, although he later obtained his GED.  He has worked in the food industry, as a disc-jockey, and in various local factories when he was not incarcerated.  Oxendine has an extensive criminal history that includes numerous convictions for drug distribution and possession.  Oxendine also has a long substance abuse history.  He started with marijuana and eventually expanded to cocaine and

crack cocaine. Oxendine's Type II diabetes makes him vulnerable to COVID-19, however he has refused to comply with his treatment regime and consistently fails to take the medication prescribed to maintain his blood sugar levels. He has served over half of his 151-month sentence, not including the additional 36 months he must serve for his supervised release violation.

The facts supporting his conviction are serious in nature. Oxendine was involved in a crack cocaine distribution network in the Bristol region. Oxendine was not a major supplier, but there is evidence that he was a middle-man supplier for street-level dealers. The parties stipulated that Oxendine was accountable for at least 840 grams of crack cocaine, although the Presentence Investigation Report found that he was likely accountable at least 1.37 kilograms. Moreover, Oxendine was previously sentenced for drug dealing in this district, received a reduced sentence, but returned to dealing drugs shortly after being released. His demonstrated recidivism cannot be ignored. Considering these facts and the § 3553(a) factors, including the need for deterrence and to protect the public, I find that Oxendine is not qualified for such extraordinary relief.

### III.

For the reasons stated, it is **ORDERED** that the defendant's motion, ECF No. 663, and supplemental motion, ECF No. 668, are DENIED.

- 7 -

ENTER: June 17, 2020

/s/ JAMES P. JONES
United States District Judge